UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

**Xcel Products, Incorporated,**
a Minnesota corporation,

        Plaintiff,

vs.

**Visual Magnetics Limited
Partnership, a Massachusetts
Domestic Limited Partnership**

        Defendant.

Case No. **14-CV-**

---

### COMPLAINT
### DEMAND FOR JURY TRIAL

Plaintiff Xcel Products, Incorporated, hereby as and for its complaint in this matter states and alleges as follows:

#### STATEMENT OF JURISDICTION

1.    Plaintiff Xcel Products, Incorporated ("Xcel") is a corporation that was formed under the laws of the State of Minnesota on July 8, 2004 and has a principal place of business in Minnesota.

2.    Upon information and belief, Defendant Visual Magnetics Limited Partnership ("Visual Magnetics") is a Domestic Limited Partnership that was formed under the laws of the Commonwealth of Massachusetts on February 15, 2006, involuntarily dissolved on June 30, 2013, and reinstated on September 30, 2013. Visual Magnetics has its principal place of business in Massachusetts.

3. Given that this dispute involves citizens of different States and the amount in controversy, exceeds the sum or value specified by 28 U.S.C. 1332, this Court has jurisdiction over this matter.

## STATEMENT OF FACTS

4. Xcel is a manufacturer and converter of printable plastic substrates for the graphic and printing industries. Visual Magnetics is also engaged in the graphics and printing industries.

5. For a number of years Visual Magnetics placed orders to purchase a custom manufactured polyester film from Xcel. When Xcel would receive such an order it would special order product from a third party vendor and the custom product would be forwarded to Visual Magnetics in exchange for payment.

6. Xcel also served as an authorized distributor for Visual Magnetics products. As such Xcel would often order finished products from Visual Magnetics and sell those finished products to customers.

7. Over time, Visual Magnetics fell behind in its payments to Xcel.

8. In November of 2013 Xcel informed Visual Magnetics that it would be strictly enforcing the use of its terms and conditions of sale which included payment within 30 days and the payment of "reasonable attorney's fees plus court costs" (see attached Exhibit A).

9. On or about December 20, 2013 Visual Magnetics delivered two purchase orders for custom product--Purchase Orders 122013-XP1 in the amount of $27,631.20 and 122013-XP2 in the amount of $50,251.20 ("the Purchase Orders") (see attached Exhibit B). Xcel promptly verbally acknowledged receipt of the Purchase Orders.

10. When the Purchase Orders were originally received, past practice had dictated that within 30 to 60 days from the delivery of the Purchase Orders Visual Magnetics would send

a date they wanted the product to be shipped to them and Xcel would respond with confirmation of that date and the shipping arrangements. At that point the 30 day payment term would begin.

11. In reliance on the delivery of the Purchase Orders, on December 26, 2013 Xcel placed an order with a third party for the custom product it needed to fulfill Visual Magnetics' order.

12. Xcel's concerns about delays in payments from Visual Magnetics rose to the level that on January 6, 2014 when Visual Magnetics asked about shipping dates for their open purchase orders with Xcel, Xcel advised that it was holding off on shipments until Visual Magnetics' account was brought current. In that same email, however, Xcel also confirmed receipt of the Purchase Orders and advised Visual Magnetics that it had been placed the order for the product necessary to fulfill the Purchase Orders.

13. At the same time that Visual Magnetics was behind on its account, it was also pressuring Xcel to sign a new distributor agreement. On February 7, 2014 Visual Magnetics and Xcel had a conference call in which Xcel confirmed that it was not willing to sign a new distributor agreement with Visual Magnetics.

14. In that same February 7, 2014 conference call, Visual Magnetics and Xcel also discussed the fact that neither party wanted to give the other party terms on their purchases from each other. As a result, both parties agreed that they would begin paying cash for all future purchases from each other, specifically including all open orders.

15. On March 6, 2014 Thomas Carroll from Xcel and Joe Deetz from Visual Magnetics had a telephone conversation in which it was agreed that Visual Magnetics would move forward with payment for its open purchase agreements so that Xcel could ship Visual

Magnetics for the product it had ordered. In that same conversation the parties confirmed that both parties would pay any product they had ordered before it was shipped.

16. On Friday March 7, 2014 the parties made arrangement for shipment of the product referenced in the Purchase Agreements to Visual Magnetics and Xcel indicated that an ACH transfer of funds to cover the cost of that product would be made to Xcel on Monday March 10, 2014.

17. On March 10, 2014, at Visual Magnetics' request, Xcel provided a payment commitment for product that agreed to purchase from Visual Magnetics.

18. After not making the promised payment on March 10, 2014, on March 11, 2014 Visual Magnetics indicated that it couldn't "settle up" until March 13, 2014.

19. When Visual Magnetics had still not paid by March 21, 2014, Xcel demanded that Visual Magnetics make payment arrangements and tell it when it could ship the product. In response Visual Magnetics stated that it had every intention of using the product but that it wanted Xcel to continue to hold the product and release it to Visual Magnetics on an as needed basis.

20. On March 31, 2014 Xcel advised Visual Magnetics that its third party supplier would not hold the material any longer, that it needed to be sent to Visual Magnetics by the end of the week, that as a custom product holding it for more than 90 days was more than fair, and that Visual Magnetics knew the terms were cash in advance when it left the order open, and that its actions had prevented the cancelling of the custom order from the third party supplier.

21. To date, Visual Magnetics has still not paid for the product and since it is a custom product Xcel cannot sell the product to anyone else and is being forced to store the product.

22.     As a result of Visual Magnetics' failure to pay for the custom product, Xcel has been damaged in the $77,882.40 amount of the Purchase Orders, incidental expenses and its attorney fees and court costs.

**COUNT ONE – BREACH OF CONTRACT**

23.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 – 22 hereof.

24.     The parties have a valid and enforceable agreement by which Visual Magnetics agreed to purchase the product evidenced by the Purchase Agreements.

25.     Xcel's terms and conditions of sale are a part of the parties' agreement and those terms include the obligation that Visual Magnetics pay the reasonable attorney's fees and court costs of this action.

26.     Xcel has conveyed its willingness and ability to provide Visual Magnetics with the product evidenced by the Purchase Agreements and has otherwise fulfilled its obligations under the terms of the parties' agreement.

27.     As a direct result of Visual Magnetics' breach of the parties' agreement, Xcel have suffered damages in excess of $75,000.00.

**COUNT TWO – ACTION FOR PRICE**

28.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 – 27 hereof.

29.     Xcel has made repeated demands upon Visual Magnetics to pay for the product evidenced by the Purchase Agreements as required by its contractual obligations.

30.    Despite such demands, no part of the said balance has been paid by or on behalf of Visual Magnetics to Xcel on the aforesaid indebtedness.

31.    Xcel is entitled to recover the price of the goods identified by the Purchase Agreements pursuant to Minn. Stat. Sec. 336.2-709.

32.    Xcel is entitled to recover incidental damages pursuant to Minn. Stat. Sec. 336.710.

**COUNT THREE – PROMISSORY ESTOPPEL**

33.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 – 32 hereof.

34.    Plaintiffs reallege the allegations contained in paragraphs 1 – 32 hereof.

35.    Visual Magnetics promised to pay for the product evidenced by the Purchase Agreements.

36.    In reliance on Visual Magnetic's promise, Xcel placed an order for custom product from a third party supplier so that Xcel could fulfill the Purchase Agreements.

37.    When Visual Magnetics left the Purchase Orders open and continued to tell Xcel that it would take the product, Xcel lost the ability to cancel the custom order from the supplier and incurred a liability to the supplier.

38.    Since it is custom product, Xcel cannot sell the product it obtained and produced for Visual Magnetics to anyone else.

39.    Under the facts, it would be inequitable for Visual Magnetics to avoid paying the Purchase Orders.

**WHEREFORE, Plaintiff Xcel Products, Incorporated seeks the following relief**:

1. Judgment against Defendant and in favor of Plaintiff in the amount of $77,882.40.

2. Judgment against Defendant and in favor of Plaintiff for such incidental damages as Plaintiff shall demonstrate at trial;

3. Judgment against Defendant for Plaintiff's costs and disbursements, including its reasonable attorney fees.

4. For such other and further relief as the Court deems just and equitable.

Dated: August 5, 2014                STEPHENSON, SANFORD, PIERSON & THONE, PLC

/e/ *Jeffrey W. Thone*
Jeffrey W. Thone; Attorney I.D. 200232
James T. Keig; Attorney I.D. 391719
Attorneys for Plaintiff
Suite 220, 1905 East Wayzata Boulevard
Wayzata, MN 55391
(952) 404-2100